# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RON WALKER, On Behalf of Himself and All
Others Similarly Situated,

        Plaintiff,

   vs.

PARADYNE NETWORKS, INC., ANDREW S.
MAY, THOMAS E. EPLEY, and PATRICK M.
MURPHY

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

8:00-CV-2096-T-24B

## PLAINTIFF'S CLASS ACTION COMPLAINT

### NATURE OF THE ACTION

1.    This is a class action on behalf of a class (the "Class") of all persons who purchased or otherwise acquired the common stock ("common stock") of Paradyne Networks Inc., ("Paradyne" or the "Company") between September 28, 1999 and September 28, 2000 (the "Class Period), seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act").

### JURISDICTION AND VENUE

2.    Plaintiff brings this action pursuant to the Securities Exchange of 1934 Act (the "1934 Act") as amended (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the 1934 Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.



4.      Venue is proper in this District pursuant to § 27 of the 1934 Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of false and misleading information, occurred in this District.

5.      In connection with the acts, conduct and other wrongs complained of herein, the defendants used the means and instrumentalities of interstate commerce.

## THE PARTIES

6.      Plaintiff purchased Paradyne common stock during the Class Period, as set forth in the certification attached hereto and incorporated herein by reference, and has suffered substantial damages as a result of the wrongful acts of defendants as alleged herein.

7.      Defendant Paradyne is a developer of high-speed network access solutions, and is headquartered at 8545 126th Avenue, North Largo, Florida 33773.

8.      The individual defendants (the "Individual Defendants"), at all times relevant to this action, served in the capacities listed below and received substantial compensation:

| Name | Position |
|------|----------|
| Andrew S. May | Chief Executive Officer and Director. |
| Patrick M. Murphy | Senior Vice President and Chief Financial Officer. |
| Thomas E. Epley | Chairman of the Board of Directors |

9.      By reason of their management positions, and membership on Paradyne's Board of Directors, and their ability to make public statements in the name of Paradyne, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) Paradyne to engage in the unlawful conduct complained of herein.

## MOTIVE, OPPORTUNITY AND KNOWLEDGE

10.     Because of their Board memberships and/or executive and managerial positions
with Paradyne, each of the Individual Defendants had access to the adverse non-public
information about the business, finances, markets and present and future business prospects of
Paradyne particularized herein <u>via</u> access to internal corporate documents, conversations or
connections with corporate officers or employees, attendance at management and/or Board of
Directors' meetings and committees thereof and/or via reports and other information provided to
them in connection therewith.

11.     Defendants had a duty to promptly disseminate accurate and truthful information
with respect to Paradyne's operations and financial condition or to cause and direct that such
information be disseminated and to promptly correct any previously disseminated information
that was misleading to the market.  As a result of their failure to do so, the price of Paradyne
common stock was artificially inflated during the Class Period, damaging plaintiffs and the
Class.

12.     The Individual Defendants, because of their positions with Paradyne, controlled
the contents of quarterly and annual reports, press releases and presentations to securities
analysts.  Each Individual Defendant was provided with copies of the reports and press releases
alleged herein to be misleading prior to or shortly after their issuance and had the ability and
opportunity to prevent their issuance or cause them to be corrected.  Because of their positions
and access to material non-public information available to them but not the public, each of these
defendants knew that the adverse facts specified herein had not been disclosed to and were being
concealed from the public and that the positive representations which were being made were then

false and misleading. As a result, each of the Individual Defendants is responsible for the accuracy of Paradyne's corporate releases detailed herein as "group-published" information and is therefore responsible and liable for the representations contained therein.

13.    Each of the defendants is liable as a primary violator in making false and misleading statements, and for participating in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Paradyne stock during the Class Period. All of the defendants had motives to pursue a fraudulent scheme in furtherance of their common goal, i.e., inflating the reported profits of Paradyne and the trading price of Paradyne stock by making false and misleading statements and concealing material adverse information. The fraudulent scheme and course of business was designed to and did: (i) deceive the investing public, including plaintiffs and other Class members; (ii) artificially inflate the price of Paradyne stock during the Class Period; (iii) cause plaintiff and other members of the Class to purchase Paradyne stock at inflated prices; (iv) allow Paradyne insiders to sell their own shares of Paradyne stock at artificially inflated prices while privy to material, adverse knowledge regarding the Company's soon to be reported financial status and (v) conceal and coverup the true financial condition of Paradyne and its recent acquisitions.

14.    During the Class Period, defendants sold thousands of Paradyne shares at artificially inflated prices, while privy to the truth regarding the Company's financial condition For example, defendant Epley, the Chairman of the Board of Directors sold thousands of shares from January 25, 2000, through March 17, 2000, at prices reaching nearly $40 per share, generating proceeds of *__nearly $10,000,000.__* Similarly, defendant Murphy exercised options at $2.00 per share and sold 80,000 shares on January 24, 2000, generating proceeds of $2,567,500.

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of

the Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of all persons

who purchased the common stock of Paradyne between September 28, 1999 and September 28,

2000, inclusive (the "Class Period").  Excluded from the Class are the defendants herein,

members of each Individual Defendant's immediate family, any entity in which any defendant has

a controlling interest, and the legal affiliates, representatives, heirs, controlling persons,

successors, and predecessors in interest or assigns of any such excluded party.

16.     Because Paradyne has millions of shares of common stock outstanding, and

because the Company's common stock was actively traded, members of the Class are so

numerous that joinder of all members is impracticable.  As of July 31, 2000, Paradyne had over

30 million shares outstanding.  While the exact number of Class members can only be

determined by appropriate discovery, plaintiff believes that Class members number at least in the

thousands and that they are geographically dispersed.

17.     Plaintiff's claims are typical of the claims of the members of the Class, because

plaintiff and all of the Class members sustained damages arising out of defendants' wrongful

conduct complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the Class members and

have retained counsel who are experienced and competent in class and securities litigation.

Plaintiff have no interests that are contrary to or in conflict with the members of the Class

plaintiff seeks to represent.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

20.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, in that defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether the Company's publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts and whether defendants breached any duty to convey material facts or to correct material facts previously disseminated;

(c)     whether defendants participated in and pursued the fraudulent scheme or course of business complained of;

(d)     whether the defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

(e)     whether the market prices of Paradyne common stock during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

**A.     Paradyne Goes Public And Announces "Outstanding"**
**Financial Performance**

21.     Paradyne went public through an initial public offering of 6,000,000 shares of its common stock at $17 per share on July 15, 1999. Paradyne develops, manufactures and distributes broadband and narrowband communications products for network service providers and business customers. After touting increasing growth and success, Paradyne stock reached over $40 per share on September 13, 1999. On October 5, 1999, Paradyne completed a secondary offering of 5 million shares, priced at $31 per share.

22.     On September 28, 1999, defendants filed a Prospectus with the SEC, which stated:

> "We manufacture substantially all of our products. . . We believe that this is
> critical in maintaining high delivery volumes and minimizing inventory."

23.     The Prospectus also stated that "[i]nventories are stated at the lower of cost or market."

24.     On October 28, 1999, Paradyne issued a press release over the *M2 Presswire* announcing third quarter, 1999 results. Paradyne reported net income of $3.6 million or $0.12 per diluted share - - a dramatic improvement from the net loss of $2.9 million and net loss of $0.11 per share for the same period of the prior year. Defendant May noted that the third quarter "exceeded expectations" and characterized the Company's third quarter revenue and earnings performance as "outstanding."

- 7 -

**B.**     **Defendants' Continue Their False And Misleading Statements**

25.     On January 19, 2000, Paradyne announced over the *Businesswire* "record" fourth

quarter 1999 and year-end results.  The Company's reported increases in revenues and net income

were enormous.  Defendants reported an increase in sales of broadband products to $153.7

million, 49% higher than the previous year; and a 32% increase in broadband revenues for the

fourth quarter ended December 31, 1999, to $43.7 million.

26.     Total annual revenues for 1999 were $225.9 million, a 14% increase over the

previous year.  Net income for 1999 was $7.9 million, or $0.26 per diluted share - - compared to

a net *loss* of $3.6 million, or $0.14 per share, the year before.  Net income for the fourth quarter

ended December 31, 1999 was $4.3 million, or $0.13 per diluted share, compared to a net loss of

$0.8 million, or $0.3 per share, in the fourth quarter of 1998.

27.     Commenting on the Company's year-end and fourth quarter results, defendant

May stated:

> "We had a terrific quarter and an outstanding year.  We carved out leading
> positions in two high growth markets, Digital Subscriber Line (DSL) and Service
> Level Management (SLM), and we continue to prove that we're winning in these
> markets.  Paradyne shipped Hotwire (R) DSL products to 20 new customers in the
> fourth quarter which represents 40 percent of the 51 new customers who
> purchased Hotwire DSL products in 1999.  Paradyne's Hotwire DSL products are
> now deployed in approximately 45 U.S. states, five Canadian provinces and 75
> countries."

28.     Market analysts following Paradyne reacted favorably, and instantly, to the news.

For example, on January 20, 2000, Robertson Stephens analyst Paul Johnson reiterated a "BUY"

rating for the Company, as a result of "better-than-expected fourth quarter results."  Commenting

on the Company's latest financial results, Johnson stated: "[i]n our view, Paradyne's management

has done an excellent job of managing its balance sheet, . . [w]e are raising our estimates for fiscal 2000 to reflect the upside surprise in the quarter and our greater confidence in the company's business model.  In addition, we are initiating fiscal 2001 estimates."

29.     On January 19, 2000, Paradyne stock traded at $35 per share.  Defendants Epley and Murphy, however, were privy to the true deteriorating financial condition of the Company, and accordingly, divested themselves of thousands of Paradyne shares, generating proceeds of over $12,000,000 at prices significantly higher than the $5 per share price on September 28, 2000, after the truth was revealed.

30.     On March 27, 2000, defendants filed an annual report on Form 10-K for the fiscal year ended December 31, 1999, signed by May, Epley and Murphy.

31.     On April 6, 2000, defendants announced a definitive agreement to acquire substantially all of the assets of Control Resources Corporation (CRC), a developer and manufacturer of broadband network access and service level management systems.  Under the terms of the agreement, Paradyne agreed to pay approximately $9 million in an asset purchase transaction with CRC's parent company, P-Com, Inc.

32.     On April 19, 2000, defendants issued a press release announcing "record" first quarter 2000 financial results.  Defendants reported that sales of broadband products fueled the "record" growth, with $46.5 million in broadband revenues, an increase of 44 percent over the same period in 1999.  Total revenues for the quarter ending March 31, 2000 were $64.5 million, an increase of 19% over the same period in 1999.  First quarter 2000 revenues increased 25% over 1999 on a pro forma diluted basis.

33.     Net income for the first quarter of 2000 was $2.5 million, or $0.07 per diluted share, compared to net income of $2.4 million, or $0.09 per share, for the same period in 1999. Commenting on the seemingly stellar results, defendant May stated:

> "Paradyne continues to hit the mark with our Hotwire DSL system.  We're shipping DSLAM's to a record number of service providers worldwide. . . During the quarter, Paradyne continued to add new customers, shipping Hotwire products to 17 new customers, which accounted for approximately 19% of total revenues for the first quarter. . . "

34.     On May 4, 2000, defendants issued a press release announcing the appointment of a new Chief Operating Officer and the continued employment of Andy May as CEO of Paradyne. According to the announcement, May would continue to have "direct responsibility" over manufacturing, finance, legal, human resources and information technologies.  Commenting on the appointment of a new COO, May stated:

> "Today marks an important step into the future for Paradyne.  The rapidly growing worldwide demand for our DSL and service level management systems requires that our sales, marketing and R&D [research and development] groups operate as a tightly focused team . . . "

35.     On May 15, 2000, defendants filed a quarterly report on Form 10-Q for the period ended March 31, 2000, signed by May and Murphy.  The Company revealed that the previously announced CRC acquisition deal would consist of a payment to CRC's parent company of $3.1 million in cash as well as a note for $4.7 million, payable in cash or common stock, and "other contingent consideration."  The quarterly report also reiterated the financial results announced on April 19, 2000.

36.     On June 8, 2000, Robertson Stephens analyst Paul Johnson reiterated his "BUY" rating for Paradyne stock to reflect "continued strong business trends in the quarter."  A little

over a month later, Paradyne announced that it was added to the Frank Russell Company's equity

index - - "widely used by investment managers as benchmarks for . . .investment strategies

determined strictly by market capitalization rankings and style attributes."

37.    In response to the repeated news touting strong and "record" financial

performance with increasing demand for Paradyne's products, the price of the Company's stock

soared to nearly $40 per share on July 12, 2000 and reached $43.125 per share on July 13, 2000.

Had the truth about Paradyne's true deteriorating financial condition been known, the stock

would not have traded at such artificially inflated levels.

38.    On July 13, 2000, defendants issued a press release announcing "record" second

quarter revenue. Total revenues for the quarter ending June 30, 2000, were $75.6 million, an

increase of 43% over the same period in 1999. Net income for the second quarter was $1.5

million, or $0.05 per diluted share, compared to a net loss of $475,000, or $0.02 per share for the

same period in 1999. Commenting on the results, defendant May stated:

> "The second quarter saw excellent revenue growth for our broadband products.
> Our revenues were fueled by the shipment of more than 3,600 DSLAMs. . . In
> addition to the DSL growth, we also had an excellent quarter for our SLM
> products. . . "

39.    On August 8, 2000, defendants issued a press release entitled "Paradyne Achieves

Three Million DSL Port Capacity Milestone." The press release announced that Paradyne

shipped three million DSL worldwide. Defendants characterized the Company's growth as

"dramatic", stating: "[r]ecord-breaking shipments of DSL . . . fueled Paradyne's strong revenue

growth in the first half of 2000. The company has seen significant growth in worldwide DSL

port capacity due to the high-density engineering of the subscriber line cards for Paradyne's

[DSL products]."

- 11 -

40.     On August 14, 2000, *a little more than thirty business days* prior to the disclosure of the Company's true financial condition, defendants filed a quarterly report on Form 10-Q signed by both May and Murphy, which reiterated the Company's second quarter 2000 financial results.  There was no discussion in the Management's Discussion and Analysis section of the Form 10-Q of any of the problems then facing the Company as alleged below, including a a lack of customer demand for the Company's products.

41.     On August 31, 2000, defendants issued a press release entitled "Paradyne ranked Among Top Four ADSL Leaders in 2Q00."  The ranking was based on sales of DSL products and quarterly revenue growth.  According to the report, issued by "a leading market research firm," the DSL market grew by 40 percent to $413 million with Paradyne posting 53 percent growth in the second quarter of 2000.  Commenting on the report, Paradyne's Vice President of Marketing, Mark Housman, stated: "[w]e are very pleased to be recognized for the progress we are making in our DSL business. Customers are selecting the value of our multiservices Hotwire and GranDSLAM and our strategy of providing the industry standards . . . [t]his report is further evidence of the widespread acceptance of our products."

42.     At the time of the press release detailed above, ranking Paradyne as fourth "among market leaders" the Company's stock traded at over $22 per share, on September 1, 2000.

43.     The statements detailed above in the Company's press releases and SEC filings were materially false and misleading.  The statements which touted the Company's "record" financial performance failed to reveal the true deteriorating condition of the Company's business and operations, including the fact that contrary to the numerous class period representations, the demand for the Company's products was declining to an extent which would negatively effect the

Company's financial results for fiscal year 2000 and 2001.  As a result of defendants' failure to reveal the true condition of Paradyne's declining sales and demand for its products, investors were not provided with a truthful picture of the Company's growth and future prospects.

44.     Similarly, defendants' statements in the Prospectus, which led the investment community to believe that defendants were carefully monitoring inventory obsolecence, and that "inventories are stated at the lower of cost or market" were materially false and misleading in representing that the inventory could be sold without loss, at its carrying value.  As disclosed on September 28, 2000, when the Company revealed it would take a multi-million dollar loss to write-off inventory, this statement was false.

## The Truth is Revealed

45.     On September 28, 2000, defendants shocked the market by revealing that, contrary to the repeated class period statements touting "record" growth and financial performance, third quarter results would be significantly lower than previously estimated, due to "reduced shipments to a few network service provider customers."  According a September 28, 2000 press release, certain customers had communicated to Paradyne that "they will not be deploying the amount of equipment that they had previously forecasted."  Nor was the Company's shortfall limited to the third quarter.  The press release revealed that "Paradyne also expects results in the fourth quarter of 2000 and calendar 2001 to be impacted by these changes."

46.     Commenting on the shortfall  - - which was a far cry from the "widespread product acceptance" touted only days before, defendant May stated:  "A few of our network service provider customers have changed their plans for rolling out DSL services and we no longer believe these customers will purchase significant amounts of equipment."  Paradyne

revealed that third quarter revenues would be between $59 million and $63 million and pro forma earnings to be between breakeven and a *loss* of $0.02 per share. For the year 2000, defendants reduced their estimates to between $251 million and $260 million and pro forma earnings of between $0.08 and $0.12 per share. Defendants also revealed that the Company would record a "one-time charge in the third quarter, principally related to a write-down of inventory that will likely be between $30 million and $35 million."

47.     In response to the news, Paradyne stock plummeted 42%, from $10 on September 27, 2000, to slightly over $5 on September 28, 2000, after the news was revealed, on unusually high trading volumes of over 7 million shares. Indeed, the full extent and magnitude of the Company's losses are still unknown to investors.

## UNDISCLOSED ADVERSE INFORMATION

48.     The market for Paradyne common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Paradyne common stock traded at artificially inflated prices during the Class Period. The artificial inflation continued until the time Paradyne admitted that it was experiencing declining sales and these admissions were communicated to, and/or digested by, the securities markets. Plaintiff and other members of the Class purchased or otherwise acquired Paradyne common stock relying upon the integrity of the market price of Paradyne common stock and market information relating to Paradyne, and have been damaged thereby.

49.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Paradyne common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein,

not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations.

50.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Paradyne's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Paradyne and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## SCIENTER ALLEGATIONS

51.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Paradyne and its business

practices, their control over and/or receipt of Paradyne's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Paradyne were active and culpable participants in the fraudulent scheme alleged herein. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

52.     The Individual Defendants engaged in such a scheme to inflate the price of Paradyne common stock in order to: (i) protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby; (ii) enhance the value of their personal holdings of Paradyne common stock and sell millions of dollars worth of their Paradyne holdings; and (iii) enable the Company to complete the acquisition of CRC in April of 2000.

## STATUTORY SAFE HARBOR

53.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Further, none of the statements pleaded herein which were forward-looking statements were identified as "forward-looking statements" when made. Nor was it stated that actual results "could differ materially from those projected." Nor were the forward-looking statements pleaded accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein. Defendants are liable for the forward-looking statements pleaded because, at the time each of those forward-looking statements

was made, the speaker knew the forward-looking statement was false and the forward-looking statement was authorized and/or approved by an executive officer of Paradynewho knew that those statements were false when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

54.     At all relevant times, the market for Paradyne common stock was an efficient market for the following reasons, among others:

(a)     Paradyne common stock met the requirements for listing, and was listed and actively traded, on the NASDAQ, a highly efficient market;

(b)     As a regulated issuer, Paradyne filed periodic public reports with the SEC and the NASD;

(c)     Paradyne stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and

(d)     Paradyne regularly issued press releases which were carried by national newswires.  Each of these releases was publicly available and entered the public marketplace.

55.     As a result, the market for Paradyne securities promptly digested current information with respect to Paradyne from all publicly-available sources and reflected such information in Paradyne's stock price.  Under these circumstances, all purchasers of Paradyne common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## COUNT I

### For Violations Of Section 10(b) Of The
### 1934 Act And Rule 10b-5 Promulgated
### Thereunder Against All Defendants

56.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein. This claim is asserted against all defendants.

57.     During the Class Period, Paradyne and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Paradyne common stock; and (iii) cause plaintiff and other members of the Class to purchase Paradyne stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants Paradyne and the Individual Defendants, and each of them, took the actions set forth herein.

58.     These defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Paradyne common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. These defendants are sued as primary participants in the wrongful and illegal conduct charged herein. The Individual Defendants are also sued herein as controlling persons of Paradyne, as alleged below.

59.     In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative

statements and reports to the investing public, they each had a duty to promptly disseminate truthful

information that would be material to investors in compliance with the integrated disclosure

provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 et seq.) and S-K (17

C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with

respect to the Company's operations, financial condition and performance so that the market prices

of the Company's publicly traded securities would be based on truthful, complete and accurate

information.

60.     Paradyne and the Individual Defendants, individually and in concert, directly and

indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails,

engaged and participated in a continuous course of conduct to conceal adverse material information

about the business, business practices, performance, operations and future prospects of Paradyne as

specified herein.  These defendants employed devices, schemes and artifices to defraud, while in

possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Paradyne's value and performance and

substantial growth, which included the making of, or the participation in the making of, untrue

statements of material facts and omitting to state material facts necessary in order to make the

statements made about Paradyne and its business, operations and future prospects in the light of the

circumstances under which they were made, not misleading, as set forth more particularly herein,

and engaged in transactions, practices and a course of business which operated as a fraud and deceit

upon the purchasers of Paradyne securities during the Class Period.

61.     Each of the Individual Defendants' primary liability, and controlling person liability,

arises from the following facts: (i) each of the Individual Defendants was a high-level executive

and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

62.   These defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pardyne's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its stock. As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

63.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Paradyne's common

stock was artificially inflated during the Class Period. In ignorance of the fact that the market price of Paradyne's shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Paradyne common stock during the Class Period at artificially inflated high prices and were damaged thereby.

64.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Paradyne, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Paradynesecurities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65.    By virtue of the foregoing, Paradyne and the Individual Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### For Violations Of Section 20(a) Of The
### 1934 Act Against Individual Defendants

67.    Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. This claim is asserted against the Individual Defendants.

68.    The Individual Defendants were and acted as controlling persons of Paradyne within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.    In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.    As set forth above, Paradyne and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their

controlling positions, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## BASIS OF ALLEGATIONS

71.     This complaint is pleaded in conformance with Federal Rules of Civil Procedure and the PSLRA. Plaintiff has alleged the foregoing based upon the investigation of plaintiff's counsel, which included a review of Paradyne's SEC filings, securities analysts' reports and advisories about the Company, press releases issued by the Company and media reports about the Company.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

(i)      Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(ii)     Awarding plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

(iii)    Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(iv)     Such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: October 12, 2000

                                                    **MILBERG WEISS BERSHAD
HYNES & LERACH LLP**

By: _Kenneth J. Vianale_

    Kenneth J. Vianale
    (Fla. Bar No. 169668)
*Trial Counsel*
Maya Saxena
(Fla. Bar. No. 0095494)
5355 Town Center Road, Suite 900
Boca Raton, FL  33486
Tel: (561) 361-5000
Fax: (561) 367-8400

    and

Steven G. Schulman
Samuel H. Rudman
One Pennsylvania Plaza
New York, NY  10119
Tel:  (212) 594-5300
Fax: (212) 868-1229

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ**
Fred T. Isquith
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 545-4677

**THE LAW OFFICES OF
   CHARLES J. PIVEN, P.A.**
Charles J. Piven
The World Trade Center, Suite 2525
401 East Pratt Street
Baltimore, MD 21202
Tel: (410) 332-0030

             **Attorneys for Plaintiff**

## PLAINTIFF'S CERTIFICATION

_____RON WALKER_____ ("Plaintiff"), declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in Parsdyne Networks, Inc. securities during the Class Period are as follows:

| # of Securities Purchased | # of Securities Sold | Price Per Share | Date |
|---|---|---|---|
| 2000 | | 26.00 | 11-12-99 |
| 1000 | | 29.77 | 3-31-00 |
| 500 | | 13.00 | 9-22-00 |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9 day of _October_ 2000.